**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RACHEL L. BENJAMIN,**

**Plaintiff,**

**v.** **Case No. 8:12-cv-2378-T-17TBM**

**CAROLYN W. COLVIN, Acting Commissioner of the United States Social Security Administration,**[1]

**Defendant.**
**________________________________/**

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was thirty-two years old at the time of her administrative hearing in October 2010. She stands 5 feet 4 inches tall and weighed 178 pounds according to administrative filings. Plaintiff has a Certificate of Completion from high school. Plaintiff reported past work in housekeeping, as a laborer, and in a deli. Plaintiff applied for disability benefits and Supplemental Security Income payments in March 2009, alleging disability as of January 31,

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

2005, by reason of bipolar condition and depression. Plaintiff's applications were denied originally and on reconsideration.

Plaintiff next received a *de novo* hearing before an Administrative Law Judge (ALJ). Plaintiff was represented at the hearing by counsel and testified in her own behalf.

Plaintiff last worked in a supermarket deli. She left the job after getting angry with the manager and throwing something at him. She has two children who live with their grandmother. Plaintiff visits them occasionally, but she alluded to a recent episode with them and the grandmother keeping the kids from her. She attempted schooling to be a medical assistant, but could not do the work.

Plaintiff has trouble talking and communicating with people. People can't understand her. She forgets things. Her boyfriend of five or six years reminds her to do things, otherwise she forgets. She has problems making decisions. She does not socialize and has problems with anger management. This has caused her to be hospitalized under the Baker Act a number of times.

She is treated at the Suncoast Center for Community Mental Health (Suncoast) and sees Dr. Joel Gleason for medications once a month. At the time of the hearing, she was taking three medications including Gabapentin for mood swings and depression. Her medication makes her drowsy. She has trouble sleeping at night and will sleep during the day. As for therapy, Dr. Gleason recommended it but she is not a crowd person.

On a daily basis, she stays in her house. Sometimes she cooks, sometimes she balls up in her room and does not come out. She does not attend church, nor does she go out. She denied recent substance abuse. (R. 48-67).

The ALJ next took testimony from Gerald Wili, a vocational expert (VE). On a hypothetical question assuming a person of Plaintiff's age, education and work experience, with no exertional limitations, but nonexertional limitations for no climbing of ladders, ropes or scaffolds; no concentrated exposure to dangerous machinery or unprotected heights; no complex or detailed tasks; only simple, routine, and repetitive unskilled tasks; only simple, superficial, and unskilled contact with the public; and only simple work-related decisions in a routine and repetitive work setting, the VE opined that such person could do Plaintiff's past work as cleaner/housekeeper, kitchen helper and deli cutter/slicer, and day laborer. Even with additional limitations for only occasional interaction with the public and supervisors and no fast production rate pace work, these jobs would remain available. If such person were off-task at least 10% of the work day, no such work would be available. (R. 67-74).

Plaintiff's date last insured was December 31, 2009. Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of November 23, 2010, the ALJ determined that while Plaintiff has severe impairments related to major depressive disorder with bipolar personality traits and polysubstance abuse disorder in general remission, she nonetheless had the residual functional capacity to perform a limited range of work at all exertional levels. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 31-39). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff presents two claims on this appeal. First, she urges that the ALJ erred by failing to properly evaluate the opinion evidence from treating and nonexamining doctors and thus improperly assessed the listings and her residual functional capacity (RFC). By her second claim, she urges that the ALJ failed to properly evaluate her symptoms and credibility.

On her first claim, Plaintiff argues that the ALJ's step-two finding of major depressive disorder (MDD) with bipolar personality traits reflects a complete misstatement and misunderstanding of her condition and, as a result, the ALJ erred in assessing her RFC and the opinions of her treating doctor. By Dr. Gleason's actual diagnosis, Plaintiff suffered major depressive disorder and borderline personality disorder traits. According to the DSM-IV, borderline personality disorder may involve traits which severely adversely affect the capacity for work. Here, the record demonstrated a pattern of impulsivity and irritability consistent with this condition. Moreover, Plaintiff contends the ALJ erred by finding that Dr. Gleason's opinions were inconsistent with his treatment notes and discounting Dr. Gleason's

opinion in part because she did not attend group therapy. Plaintiff argues that the avoidance of therapy was a product of her impairment and thus was not an adequate reason to discount the same.[2] For the same reason, the ALJ also erred in finding that her poor insight and judgment were a product of her noncompliance. Instead, it was just the opposite–her noncompliance was the product of her poor insight and judgment. Finally, she urges that Dr. Gleason's finding of four episodes of decompensation are supported by the record given hospitalizations in 2006, 2008, and suicidal events in 2002 and 2005. In sum, Plaintiff urges the case be reversed and remanded for further assessment of her RFC.

As for the nonexamining doctors, Plaintiff urges that the ALJ failed to state the weight given the opinions of the nonexamining psychologists, Dr. Michael Stevens and Dr. Arthur Hamlin, indicating only that he gave them "some" weight. While the ALJ discussed Dr. Stevens' opinion that she was capable of understanding and remembering instructions, performing simple tasks, being cooperative, and being aware of hazards, Dr. Stevens did not refer to any evidence supporting his opinion. Thus, Plaintiff urges the opinions of the nonexamining doctors should not have been relied upon and the decision should be reversed and remanded. (Doc. 17 at 7-10).

In response, the Commissioner urges that substantial evidence supports the ALJ's mental RFC, which included a number of limitations related to Plaintiff's mental condition. More particularly, the ALJ's assessment was supported by the opinions from Dr. Linda Appenfeldt, a consulting examiner, who concluded Plaintiff's mood was within normal limits,

[2] In legal support, Plaintiff cites *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1251 (N.D. Ala. 2003) (finding support in opinion evidence for the conclusion that a claimant's "failure to fully follow prescribed treatment at times might be a symptom of this depression.").

her memory was intact, and her sustained concentration, persistence, understanding, memory and social interaction were all within normal limits. Likewise, Dr. Steven's opinions also support the ALJ's mental RFC. Given that the mental RFC is supported by substantial evidence, the Commissioner contends Plaintiff is not entitled to relief on this claim.

As for the opinions of Drs. Gleason, Hamlin, and Stevens, the Commissioner maintains such were properly considered. Dr. Gleason's treatment notes were inconsistent with his more extreme limitations and thus the ALJ properly discounted his opinions. As for the nonexamining doctors, any error in assigning weight to their opinions was harmless. As for Dr. Hamlin's assessment, the Commissioner notes that the ALJ actually found Plaintiff more limited in concentration, persistence or pace and thus any error in not assigning weight to his opinion did not prejudice Plaintiff. As for Dr. Stevens, the Commissioner urges the ALJ did not err in assigning considerable weight to a portion of his opinion or in failing to explain that decision. (Doc. 18 at 5-10).

After careful consideration of the decision in light of the mental health record, I find no error requiring that the decision be remanded for further review. The mental health record reveals that Plaintiff treated periodically with Dr. Gleason at the Suncoast between 2006 and 2010. According to the treatment notes, Plaintiff was consistently diagnosed as suffering major depressive disorder (MDD), substance dependence/abuse in remission, and borderline personality disorder traits. *See, e.g.* (R. 286-88, 290, 298-99, 306, 313-16, 319, 388-90, 396, 404-05). Treatment was by way of medications, and the notes reflect repeated recommendations that she attend group therapy for her mood issues. The treatment notes themselves do not speak directly to her functional limitations or reflect significant restrictions

imposed by Dr. Gleason or his staff. After review of these records, I am obliged to conclude that the ALJ's assessment that such reflected significant mental impairments but also the capacity for significant mental function is supported by substantial evidence.

First, while Plaintiff is correct that the ALJ mischaracterized her diagnoses (R. 33) when compared to those in Dr. Gleason's notes, there is no error at step two that requires a remand.[3] At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Here, Plaintiff claimed she was disabled by reason of depression and bipolar disorder. As found by the ALJ, her depression is supported by the medical record. Dr. Gleason consistently diagnosed MDD with borderline personality disorder traits. In some notes, his diagnoses also included, rule-out bipolar. One nonexamining doctor, Dr. Stevens, noted the presence of depression. (R. 333). The other, Dr. Hamlin, noted the presence of bipolar disorder and borderline personality disorder traits. (R. 356, 360). Only the consulting examiner, Dr. Appenfeldt, did not note depression. By her conclusion, the diagnoses were for mood disorder and borderline personality traits. (R. 350). Here, as Plaintiff urges, while finding Plaintiff suffered severe depression, the ALJ appears to have combined the bipolar diagnosis with that of borderline personality disorder traits. However, despite that misstatement, I find the decision reflects that the ALJ understood Dr. Gleason's actual diagnoses (R. 36), considered and weighed the same in deciding the

---

[3]Under the applicable standard, the finding of any severe impairment at step two is satisfactory. *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two.").

significance of these personality traits on Plaintiff's capacity to work, and accounted for the same in the RFC assessment.

As determined by the ALJ, Dr. Gleason's notes reflected generally normal findings on mental status examination aside from poor insight and judgment. Significantly, the doctor's notes did not document, note, or otherwise reflect the severe functional limitations he later attributed to Plaintiff. Thus, I cannot agree with Plaintiff that the ALJ erred in finding inconsistency between the treatment notes and the doctor's later RFC assessment which found her without any useful function in significant areas of work-related mental functioning. And, as determined by the ALJ, the treatment notes indisputably reflect that Plaintiff was periodically noncompliant with her medication regimen and completely resistant to Dr. Gleason's repeated recommendation that she obtain therapy to address her mood and anger issues. While counsel now urges that such resistance and noncompliance was the product of her mental condition and cannot be held against her, the contention is no where reflected in the medical records from Dr. Gleason or Suncoast.

As for Dr. Gleason's opinions concerning Plaintiff's mental RFC, such were fairly considered and addressed by the ALJ. Thus, in September 2010, Dr. Gleason completed a Mental Impairment Questionnaire, wherein he described clinical findings of severe mood swings and poor impulse control resulting in a number of symptoms. (R. 376-381). By this assessment, Plaintiff had no useful ability to function in areas such as maintaining regular attendance, completing a normal workday/workweek without interruption from psychological symptoms, performing at a consistent pace without an unreasonable number of rest periods, accepting instructions and responding appropriately to criticism with supervisors, getting

along with co-workers, and dealing with normal work stress. (R. 378). Before addressing the opinion evidence, the ALJ first reviewed the treatment history and the report Dr. Appenfeldt, the consultative examiner. (R. 35-37). The ALJ then stated,

> As for the opinion evidence, Dr. Gleason submitted responses to a "mental impairment questionnaire" provided to him by the claimant's representative in which he opined that the claimant is markedly limited in a variety of functional abilities to the extent that she is essentially disabled from performing any work. (Exhibit 11F). The opinions contained in Dr. Gleason's mental impairment questionnaire, however, are inconsistent with his own treatment notes and previous descriptions of the claimant's mental status. Specifically, Dr. Gleason routinely indicated that the claimant was alert, made good eye contact, was well groomed, and oriented to time, place, and person. (Exhibit 12F). Generally, affect was euthymic, thought processes were logical, and speech was normal in rate and volume. Only insight and judgment ranged from poor to fair as would be expected with her noncompliance and recalcitrance regarding prescribed recommended care and follow-up. While he says he saw the claimant every two months and the claimant testified to once a month, there are many gaps in the treatment record, and only one relates to an alleged lack of or change in medical coverage. While Dr. Gleason refers to four or more episodes of deterioration, he fails to document them, and the evidence does not support them. The claimant in fact indicated one Baker Act admission in January 2008 when she had a dispute with a supervisor. There are no reports of hospitalization, crisis stays or other emergency room treatments necessary. GAFs in 2010 with limited treatment are 55. The consultant examiner said that the claimant had a good prognosis with appropriate treatment, and Dr. Gleason has noted resistance to all recommendations for therapy. While the claimant has alleged an anger management problem, she has done nothing about it except take medications for a period of up to six months at most. While she alleged virtually no activities at hearing, the records described above indicate that she was not fully candid. I have accorded limited weight to Dr. Gleason's opinions contained in his mental impairment questionnaire as they are inconsistent with his own clinical findings and are not supported by the weight of the evidence of record as a whole.

(R. 37). Thus, in giving this opinion "limited weight," the ALJ noted (1) inconsistencies between the mental RFC assessment and Dr. Gleason's findings on mental status and routine examination, which were generally normal apart from findings as to judgment and insight,

(2) gaps in her treatment records, (3) the lack of proof of four episodes of deterioration, (4) GAF scores of 55 with limited treatment, (5) Plaintiff's resistance to recommended therapy for her anger management issues, and (6) the consulting examiner's opinion that Plaintiff had a good prognosis with appropriate treatment.

After a review of the record, I am obliged to conclude that these findings are, on the whole, supported by substantial evidence on record. It is accurate that the treatment notes did not reflect or suggest that Plaintiff had "no useful function" as Dr. Gleason's mental RFC suggests, and, to that extent, there was significant inconsistency. Further, the record supports some gaps in Plaintiff's treatment and the ALJ was entirely correct that the records reflected Plaintiff's noncompliance to care which the treating doctor obviously believed would help her with her mood issues. This noncompliance was not an inappropriate consideration. While I do not endorse the ALJ's conclusion that Plaintiff's poor to fair insight and judgment "would be expected with her noncompliance and recalcitrance regarding prescribed recommended care and follow-up," even if such is correct (it is not found in the treatment notes), that does not alter the conclusion that Plaintiff did not act to help herself or that the whole of the reasons indicated for discounting Dr. Gleason's opinion are otherwise supported by substantial evidence. As Plaintiff's brief concedes, she had held numerous jobs over the years but had difficulty in holding them for long periods. Even by her account, her mood and anger issues contributed to this. For instance, Plaintiff testified that she left her last job not because she could not do the work but because she got mad and threw something at her boss. There are indications that Plaintiff appreciated her condition yet she repeatedly failed to avail herself of available programs that her doctor believed would help. As for the ALJ's statement

that Dr. Gleason failed to document four or more episodes of deterioration, Plaintiff does not demonstrate it is incorrect.[4] Finally, a fair reading of Dr. Appenfeldt's report, which is not challenged by Plaintiff, substantially undermines her argument that the mental RFC opinions of Dr. Gleason should be fully accepted. *See* (R. 348-50). In sum, while Plaintiff may disagree with the ALJ's rationale and the conclusions for discounting Dr. Gleason's opinions, she fails to show that such are not supported by the record evidence.

With regard to the ALJ's handling of the opinions by the nonexamining psychologists, the decision reflects the ALJ's general conclusion that ". . . these opinions do deserve some weight as they are supported by the objective medical evidence of record." (R. 37). Beyond that, the opinion by Dr. Hamlin (R. 353-69) is not further addressed. As for the mental assessment by Dr. Stevens (R. 330-46), the decision reflects that the ALJ afforded "considerable weight" to his opinion that Plaintiff was "capable of understanding and remembering instructions, performing simple tasks, being cooperative, and being aware of hazards." *Id.* By Plaintiff's argument, the finding of some weight is vague and both the doctors' opinions are unexplained and should not have been accepted by the ALJ. In assessing the medical evidence, an ALJ is required to state with particularity the weight given to the different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). However, in certain circumstances, courts have also held that where an ALJ fails

---

[4]Plaintiff cites four instances which she urges should have been fully considered by the ALJ "as to whether they met the duration requirement of the regulations." (Doc. 17 at 9). However, a review of the medical evidence cited in her brief tends to support the ALJ's conclusion that she had suffered one or two periods of decompensation for extended periods and no more.

to sufficiently assign weight to a physician's opinion and that opinion does not contradict the ALJ's decision, remand would not serve a useful purpose and thus is unnecessary. *See Shaw v. Astrue*, 392 F. App'x 684, 686-87 (11th Cir. 2010) (declining to remand due to a failure to explicitly assign weight to a medical opinion that did not directly contradict the ALJ's decision); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (same); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (same).

Here, while the ALJ did not specifically mention the assessment by Dr. Hamlin, I find the decision is properly read to reflect the conclusion that his opinion was given "some weight" and that such assessment, in this case, is adequate. As the Commissioner urges, the decision reflects that the ALJ in fact found Plaintiff *more* limited than that reported by Dr. Hamlin in the PTRF. Thus, the ALJ found Plaintiff moderately limited in maintaining concentration, persistence, or pace (R. 34), despite Dr. Hamlin's finding of only a mild limitation (R. 363). Additionally, the ALJ found Plaintiff had experienced one or two episodes of decompensation (R. 34), despite Dr. Hamlin's finding of no such episodes (R. 363). Thus, even if the ALJ's determination to grant "some weight" to Dr. Hamlin's opinion is impermissibly vague, a conclusion that I do not endorse, any error in this manner did not prejudice Plaintiff in any way.[5] A remand for such error would serve no purpose. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (stating that remand is appropriate only when the claimant has been prejudiced by a deficiency in the ALJ's decision).

[5] There is an RFC form in the record which appears to be completed by Dr. Hamlin but it is not signed or dated. (R. 367-69). The RFC assessment therein (R. 369) is not inconsistent with that determined by the ALJ.

As for the ALJ's decision to give a portion of Dr. Stevens' opinion "considerable weight," Plaintiff urges that the opinion by this nonexamining doctor is left unexplained and thus should not have been relied upon.[6] I find the argument unpersuasive. Dr. Stevens completed both a Psychiatric Review Technique Form (PRTF) and a Mental RFC Assessment. *See* (R. 330-46). In the PRTF, dated the same date as the mental RFC assessment, Dr. Stevens set forth the medical findings and rationale for his evaluation of the severity of Plaintiff's mental functioning. *See* (R. 342). Contrary to Plaintiff's argument, I find it insignificant that such findings were not repeated in the RFC form completed at the same time. Moreover, the decision reflects that the ALJ explained his reliance on this doctor's opinion because he found such were consistent with the claimant's presentation upon routine examination and are well-supported by the weight of the evidence of record. (R. 37). In light of this, I cannot agree with Plaintiff that the opinion of Dr. Stevens is unexplained or that the ALJ failed to reveal his rationale for affording a portion of it substantial weight.

Finally, Plaintiff's argument that the ALJ reached the wrong RFC assessment is not demonstrated apart from her reliance on the opinions of Dr. Gleason, which I find was adequately discounted. Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the

---

[6]In assessing the severity of Plaintiff's mental condition, Dr. Stevens found Plaintiff to suffer depression, with mild limitations in activities of daily living and moderate limitations in social functioning and maintaining concentration, persistence or pace. (R. 340). In comments to his mental RFC assessment, the doctor noted Plaintiff could understand and remember instructions, perform simple tasks, be cooperative, and aware of hazards. (R. 346).

medical consequences thereof. *Lewis*, 125 F.3d at 1440. In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). However, the RFC is not a medical opinion and the final responsibility for deciding a claimant's RFC is with the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Here, the ALJ assessed Plaintiff capable of work at all exertional levels but limited by reason of her mental condition to performing work requiring only simple work-related decisions and tasks requiring no more than 3-step instructions, no more than occasional simple and superficial contact with the public and occasional interaction with supervisors, and no fast-paced production work. (R. 35). Apart from the rather extreme limitations suggested by Dr. Gleason, which I find were adequately discounted, this RFC appears fairly contoured to meet Plaintiff's personality traits as revealed by the whole of her medical records. As noted, the RFC assessment is ultimately the decision of the ALJ. Because the Plaintiff does not otherwise demonstrate error in this assessment, I find no cause to remand on this claim.

By her second claim, Plaintiff argues that two reasons given by the ALJ for discounting her credibility--that she failed to show for appointments on numerous occasions and did not attend group therapy for anger management–were not cause to discount her credibility as such were the product of her borderline personality traits. (Doc. 17 at 11-12).

In response, the Commissioner argues that the ALJ properly discounted Plaintiff's subjective complaints on the basis of her lack of compliance with treatment. The record supports that Plaintiff missed appointments, failed to take prescribed medications, and refused to participate in therapy. The Commissioner urges the record does not support that Plaintiff's

noncompliance was the product of her condition. Group therapy was prescribed by Dr. Gleason and thus he obviously believed such appropriate. Other evidence supported that Plaintiff could be around other people, such as her reports of using public transportation, shopping in stores, engaging in church activities and volunteering at her son's school. (Doc. 18 at 10-12).

In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In applying the standard, it is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."). "But the ALJ's discretionary power to determine the credibility of testimony is limited by [her] obligation to place on the record explicit and adequate reasons for rejecting that testimony." *See id.* at 839 ("If the ALJ refused to credit subjective pain testimony where such testimony is critical, [he] must articulate specific reasons for questioning the claimant's credibility.").

Here, the ALJ found Plaintiff's subjective complaints less than fully credible because of significant inconsistencies in the record as a whole, and because she failed to comply with prescribed treatment and to take appropriate steps to help herself. (R. 35, 38). The record supports that Plaintiff repeatedly did not show for scheduled appointments at her mental health treatment facility. (R. 35, 283-85, 406-08). In addition, Plaintiff, on several occasions, did not properly take prescribed medication. (R. 36, 288, 290, 299, 313, 396). Further, Plaintiff consistently refused to partake in therapy which Dr. Gleason indicated was necessary for her to get better. (R. 36, 389, 396). Finally, Plaintiff also ignored Dr. Gleason's guidance to abstain from all illicit drugs, as she admitted to using cocaine after he gave her that instruction. (R. 389, 398).

Plaintiff argues that her noncompliance with prescribed therapy cannot be a basis for the ALJ's credibility finding since the symptoms of her mental impairments prevented her from attending group therapy sessions. In support, she again cites the *DSM-IV* and urges that borderline personality traits would cause her instability of treatment. However, there is simply nothing in the treatment notes to support this contention. Particularly, there is no indication in this record that Dr. Gleason prescribed this care believing that Plaintiff was incapable of compliance. In these circumstances, I conclude that the undisputed evidence of lack of compliance with prescribed care was a legitimate consideration by the ALJ. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[T]he ALJ's consideration of [claimant's] noncompliance as a factor in discrediting [her] allegations of disability is adequately supported ...."); *Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988). Consequently, Plaintiff is not entitled to relief on her second claim. Here, the ALJ adequately

articulated his reasons for discounting Plaintiff's credibility and the stated reasons are supported by substantial evidence on record.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of Defendant and to close the case.

Respectfully submitted this
7th day of February 2014.

.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record